ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| FÉLIX ANTONIO SÁNCHEZ BORRERO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE SALUD<br><br>Recurrido | TA2026RA00008 | *Revisión Administrativa* procedente del Departamento de Salud<br><br>Caso Núm.: DSCR-PRBGC-2025-09-22-05<br><br>Sobre: Reconsideración Certificado Ley 300 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2026.

Comparece ante nos el señor Félix Antonio Sánchez Borrero (Sr. Sánchez Borrero o Recurrente) y solicita la revocación de la determinación administrativa que la Oficina del *Puerto Rico Background Check Program* adscrita al Departamento de Salud (agencia recurrida) notificó, el 12 de diciembre de 2025. En esta, la agencia recurrida denegó la solicitud de certificado de cumplimiento que interpuso el Recurrente bajo la Ley Núm. 300-1999, *Ley de Verificación de Credenciales e Historial Delictivo de Proveedores a Niños, Personas con Impedimentos y Profesionales de la Salud,* según enmendada, 8 LPRA sec. 481 *et seq.* (Ley 300-1999).

Por los fundamentos que exponemos a continuación, confirmamos el dictamen impugnado.

**I.**

El Sr. Sánchez Borrero procuró ante la agencia recurrida una certificación de cumplimiento al amparo de la Ley 300-1999, bajo el *Puerto Rico Background Check Program* (PRBCP) y el programa del

*Sistema Integrado de Credenciales e Historial Delictivo* (SICHDe). Lo antes, como requisito para desempeñarse como proveedor de servicios de cuidado y salud a personas de edad avanzada, niños o personas con impedimentos. Junto a su solicitud, el Recurrente presentó un certificado negativo de antecedentes penales, una fotografía reciente de su persona y muestras de sus huellas dactilares, entre otros.

Tras la evaluación realizada por las entidades federales y estatales concernidas, la agencia recurrida emitió una certificación en la cual notificó que el Recurrente no cumple con la citada Ley 300-1999. En particular consignó que, la certificación está basada en los resultados obtenidos de las huellas dactilares registradas y enviadas al *Federal Bureau of Investigation* (FBI), así como, de la búsqueda local en el sistema del Departamento de Justicia de Puerto Rico y en la base de datos de la Policía de Puerto Rico.

Insatisfecho, el Sr. Sánchez Borrero instó una solicitud de reconsideración ante la agencia recurrida. Mediante una carta suscrita por su directora, el 5 de septiembre de 2025, el ente administrativo rechazó su petitorio. Hizo constar en dicha misiva que, surgió de la investigación y de la información recibida por la agencia federal, FBI, que el Recurrente posee un historial delictivo de apropiación ilegal y agresión. Expuso además que, debido a que ambos delitos (en cualesquiera de sus grados o modalidades) se encuentran enumerados en el Artículo 4 de la Ley 300-1999, 8 LPRA sec. 482(a), ello impide la concesión del certificado solicitado.

El Recurrente fue debidamente apercibido de su derecho a revisión y, a esos efectos, la causa fue referida a una oficial examinadora quien, tras evaluar la totalidad del expediente formuló las siguientes determinaciones de hechos:

1. El 16 de abril de 2025 el Peticionario, Félix Antonio Sánchez Borrero se realizó el proceso de toma de huellas como parte de los requisitos del PRBGC para obtener un certificado de cumplimiento con la Ley 300-1999.
2. Como resultado, el PRBGC recibió el historial delictivo del Peticionario, del cual se desprenden los cargos de

"apropiación ilegal" cometido en Puerto Rico y de "agresión" cometido en Nevada, EE.UU. en el 2008.

3. El 13 de agosto de 2025, luego de examinar la solicitud del Peticionario y llevar a cabo los procesos de toma de huellas dactilares e investigación de delitos en las bases de datos estatales y federales, el PRBGC determinó que el Peticionario no cumplía con las disposiciones de la Ley 300-1999.

4. El PRBGC le expidió al Peticionario una certificación de "no cumplimiento".

5. El 22 de agosto de 2025, el Peticionario presentó ante el PRBGC una solicitud de reconsideración, alegando su "crecimiento personal y profesional... para ser un ciudadano integro y un profesional comprometido con las [sic] más altos estándares éticos". El Peticionario se desempeña como enfermero graduado.

6. El 5 de septiembre de 2025, en respuesta a la solicitud de reconsideración del Peticionario, el PRBGC emitió la correspondiente comunicación reiterando el incumplimiento con el artículo 4 de la Ley 300, supra, por el haber cometido el delito de apropiación ilegal (Illegal Appropiation) y agresión (Battery) según reflejado en el informe del FBI. (Nota omitida.)

7. Posteriormente, el 22 de septiembre de 2025, el Peticionario presentó la solicitud de revisión de autos.

8. En el año 2005 el Peticionario se declaró culpable y fue sentenciado por haber cometido el delito tipificado en el Artículo 165 del Código Penal, siendo condenado a la pena de multa de $300.00. Actualmente, dicho delito no se refleja en el Certificado de Antecedentes Penales.

9. En cuanto al delito de agresión cometido en Nevada, EE.UU., de acuerdo con la certificación expedida por el Tribunal de Justicia de Reno, no existe récord criminal a nombre del Peticionario.

10. No existen delitos adicionales en el historial del Peticionario.

11. El Peticionario presentó junto con su solicitud de revisión los siguientes documentos:
    a. Carta suscrita por Lourdes Borres, Directora del Programa PR Background Check de 5 de septiembre de 2025
    b. Copia de la sentencia en el caso criminal número ISCR200501222 del Tribunal de Primera Instancia, Centro Judicial de Mayagüez
    c. Certificado Negativo de Antecedentes Penales expedido por el Negociado de la Policía de Puerto Rico
    d. Nevada Department of Public Safety to Obtain a Copy of Nevada Criminal History Records (DPS-006)
    e. Certificación del Tribunal de Justicia de Reno firmada por R. Rodriguez, Deputy Clerk II
    f. Certificación del Resultado de análisis de verificación de credenciales e historial delictivo
    g. Solicitud de Reconsideración al PRBCC
    h. Hoja de Certificación del Registro de Delito Sexual, Abuso con Menores y Violencia Doméstica de la Policía de Puerto Rico Ley 266) de los años 2020,2022 y 2023

12. El PRBGC por v[í]a de su representante legal, replicó la solicitud del caso de autos alegando que la Ley 300, *supra*, no le confiere al Secretario de Salud discreción para relevar o mitigar los efectos de las convicciones mencionadas; además, de la falta de justificación jurídica que justifique se reconsidere la denegatoria a la expedición de la certificación de Ley 300-1999.

Sobre tales bases, la oficial examinadora recomendó en su informe sostener la referida denegatoria, lo cual fue acogido por el Secretario de Salud.

Inconforme con la *Resolución* final, el Recurrente acude ante nos y señala la comisión del siguiente error:

> Erró el Departamento de Salud de Puerto Rico, a través del Programa de Background Check (PRBGC), al confirmar la denegatoria del Certificado de Cumplimiento bajo la Ley Núm. 300-1999 mediante la aplicación automática y absoluta del Artículo 4 del estatuto, sin ejercer interpretación conforme a la Constitución del Estado Libre Asociado de Puerto Rico y sin considerar la política pública de rehabilitación y reinserción social, así como la prueba presentada por el recurrente sobre cumplimiento total de sentencia, ausencia de reincidencia, tiempo transcurrido desde los hechos y rehabilitación demostrada; por lo cual la determinación impugnada resulta arbitraria, irrazonable, carente de evidencia sustancial en el expediente administrativo y violatoria del debido proceso de ley.

En cumplimiento con nuestra *Resolución*, la agencia recurrida compareció mediante su *Escrito en Cumplimiento de Resolución.* Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. La Revisión Judicial y la deferencia**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. Ahora bien, en el ejercicio de tal facultad, el foro apelativo está obligado a ser deferente a las determinaciones de los organismos administrativos, en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, resuelto el 27 de marzo de 2025. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos, a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56, resuelto el 21 de mayo de 2025.[1] Por último, permite a los foros judiciales velar que los entes administrativos den cumplimiento a los mandatos constitucionales,

---

[1] Véase, además, *Jusino Rodríguez v. Junta de Retiro del Gobierno de Puerto Rico,* 2024 TSPR 138, resuelto el 26 de diciembre de 2024.

en especial, al debido proceso de ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).

Como se sabe, las agencias administrativas son -en muchas ocasiones- los primeros intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Oficina de Ética Gubernamental,* 2024 TSPR 130, resuelto el 10 de diciembre de 2024. Ahora bien, son los tribunales los que gozan de facultad para interpretar las leyes y la Constitución. *Íd.* Por consiguiente, ante una interpretación de la agencia que produzca resultados incompatibles o contrarios a su política pública o a su propósito interpretado, la deferencia cede ante la interpretación administrativa. *Íd.* Entiéndase que, los foros judiciales no tienen que ser deferentes ante la interpretación de derecho que realice un organismo administrativo, sencillamente porque la legislación es ambigua. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* supra. Por tanto, al revisar una actuación de una agencia administrativa, el criterio rector es la razonabilidad. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De manera que, procede la revisión judicial cuando el organismo administrativo haya actuado de forma arbitraria, ilegal, irrazonable o que haya abusado de su discreción. *Íd.*

A tono con lo anterior, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, y su jurisprudencia interpretativa limitan la revisión judicial a tres (3) aspectos: (1) si es apropiado el remedio concedido; (2) si las determinaciones de hechos están basadas en evidencia sustancial; (3) si las conclusiones de derecho fueron correctas. *Íd.* De conformidad, a tenor de la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, el dictamen final del ente administrativo sujeto a revisión judicial ha de contener la advertencia sobre el derecho a solicitar reconsideración o revisión judicial, adicional a las determinaciones de hechos y a las conclusiones de derecho. *Íd.*

Como vemos, al ejercer su facultad revisora, los tribunales no pueden descartar de forma absoluta el dictamen administrativo, sin

antes haber examinado la totalidad del expediente y haber determinado que la agencia actuó irrazonablemente al ejercer su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra. Al mismo tiempo, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Íd*; *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021).

A tono con lo anterior, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Lo antes, en consideración a la facultad inherente que poseen los foros judiciales de interpretar la ley. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* supra.[2]  De manera que, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

De otra parte, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Transp. Sonnell v. Jta. Subastas ACT,* 214 DPR 633 (2024); *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. Por lo tanto, si al examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria

---

[2] En *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, supra, el Alto Foro acogió lo resuelto en *Loper Bright Enterprises v. Raimondo,* 603 US 369, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), en donde el Tribunal Supremo Federal pautó el fin de conceder deferencia absoluta a las apreciaciones de derecho de los organismos administrativos. De conformidad, el Alto Foro concluyó que "la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales."

o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023).

### B. Ley 300-1999

Según la Exposición de Motivos, la Asamblea Legislativa aprobó la Ley 300-1999 con el propósito de establecer como política pública mecanismos para prevenir el maltrato o abuso físico o sexual en contra de niños, personas con impedimentos y envejecientes en los centros de cuidado, centros de servicios médicos, entre otros. A esos efectos, y debido al riesgo que implica que una persona con un historial delictivo de delito sexual violento, delito contra la integridad física, delito contra menores y delito económico, entre otros, pueda incurrir nuevamente en ese tipo de conducta, el Artículo 4 de la Ley 300-1999, *supra,* expresamente prohíbe que esta persona pueda proveer servicios de cuidado a niños, envejecientes y personas con impedimentos. La citada disposición particularmente establece:

> 482. Prohibiciones-Proveedores y certificación
>
> (a) Ninguna persona podrá desempeñarse como proveedor de servicios de cuidado, o centros de cuido, según definidos en las secs. 351 et seq. de este título, conocidas como "Ley de Establecimientos para Personas de Edad Avanzada", así como égidas, casas de salud, auspicio, salud en el hogar, o cualquier otra modalidad que ofrezca servicios a personas de edad avanzada, niños o personas con impedimentos, ni podrá proveer tales servicios en la jurisdicción del Estado Libre Asociado de Puerto Rico, a menos que haya solicitado y obtenido previamente una certificación de que no aparece registrada en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores creado mediante las secs. 535 et seq. del Título 4; ni en el Sistema de Información de Justicia Criminal creado mediante las secs. 531 et seq. del Título 4, como convicta por ningún delito sexual violento o abuso contra menores, ni por ninguno de los delitos enumerados en este Artículo y relacionados a las secs. 5001 et seq. del Título 33, conocidas como el "Código Penal de Puerto Rico", y a consecuencia aparezca con algún tipo de delito o haya presentado credenciales falsos según aparezca en el Informe del Sistema Integrado de Credenciales e Historial Delictivo (SICHDe) adscrito al Departamento de Salud. El referido Registro incluirá aquellos casos en que la persona se haya declarado culpable en el foro estatal, federal o en cualquier otra jurisdicción de Estados Unidos de América, por los siguientes:
> (1) Asesinato, en cualquiera de sus grados o modalidades.
> (2) Homicidio, en cualquiera de sus grados o modalidades.
> (3) Incitación al suicidio.

(4) Aborto por fuerza o violencia.

(5) Delitos relacionados a Ingeniería Genética y Reproducción Asistida.

**(6) Agresión, en cualquiera de sus grados o modalidades.**

(7) Lesión Negligente.

(8) Secuestro de menores.

(9) Privación ilegal de custodia.

(10) Adopción a cambio de dinero.

(11) Corrupción de Menores.

(12) Seducción de menores a través de la Internet o medios electrónicos.

(13) Abandono de adultos mayores e incapacitados.

(14) Agresión sexual.

(15) Incesto.

(16) Actos lascivos.

(17) Bestialismo.

(18) Acoso sexual.

(19) Exposiciones obscenas.

(20) Proposición obscena.

(21) Proxenetismo, rufianismo y comercio de personas, en cualquiera de sus grados o sus modalidades.

(22) Envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno.

(23) Espectáculos obscenos.

(24) Producción de pornografía infantil.

(25) Posesión y distribución de pornografía infantil.

(26) Utilización de un menor para pornografía infantil.

(27) Exhibición y venta de material nocivo a menores.

(28) Propaganda de material obsceno o de pornografía infantil.

(29) Venta, distribución condicionada.

(30) Transmisión o retransmisión de material obsceno o de pornografía infantil.

(31) Restricción de libertad, en cualquiera de sus grados o sus modalidades.

(32) Secuestro, en todas sus modalidades.

(33) Servidumbre involuntaria o esclavitud.

(34) Trata humana.

(35) Recopilación ilegal de información personal, en cualquiera de sus grados o sus modalidades.

(36) Grabación ilegal de imágenes.

(37) Grabación de comunicaciones por un participante.

(38) Violación de morada.

(39) Violación de comunicaciones personales.

(40) Alteración y uso de datos personales en archivos.

(41) Revelación de comunicaciones y datos personales.

**(42) Apropiación ilegal, en cualquiera de sus grados o sus modalidades.**

(43) Robo, en cualquiera de sus grados o sus modalidades.

(44) Extorsión.

(45) Escalamiento, en cualquiera de sus grados o sus modalidades.

(46) Usurpación.

(47) Daños, en todas sus modalidades.

(48) Fraude.

(49) Fraude por medio electrónico.

(50) Uso, posesión o traspaso de tarjetas con bandas electrónicas.

(51) Impostura.

(52) Apropiación ilegal de identidad.

(53) Falsificación de documentos.

(54) Falsificación de licencia, certificado y otra documentación.

(55) Posesión de instrumentos para falsificar.

(56) Lavado de dinero.

(57) Utilización o posesión ilegal de tarjetas de crédito y tarjetas de débito.

(58) Incendio, en cualquiera de sus grados o sus modalidades.

(59) Estrago.

(60) Sabotaje de servicios esenciales.

(61) Conspiración.
(62) Enriquecimiento ilícito.
(63) Enriquecimiento injustificado.
(64) Retención de propiedad.
(65) Certificaciones falsas.
(66) Soborno.
(67) Oferta de soborno.
(68) Influencia indebida.
(69) Malversación de fondos públicos.
(70) Explotación financiera.

En atención a los derechos que el Estado interesa proteger, el Artículo 7 de la Ley 300-1999, 8 LPRA sec. 482c, requiere que toda persona vinculada a la provisión de servicios a niños, personas de edad avanzada, personas con impedimentos y poblaciones vulnerables obtenga del SICHDe[3] un certificado de cumplimiento con las disposiciones de la Ley 300-1999, *supra,* y del Reglamento 9030 del Departamento de Salud, *Reglamento del Sistema Integrado de Credenciales e Historial Delictivo del Departamento de Salud* (Reglamento 9030)*,* aprobado el 29 de mayo de 2018.[4] Lo antes, basado en los resultados del registro de huellas dactilares que envíe el FBI, y de la búsqueda a nivel local en el sistema del Departamento de Justicia y de la Policía de Puerto Rico. Además, deberá estar sujeta a un cotejo de historial delictivo rutinario.

## C. Eliminación de los antecedentes penales

Durante más de cuatro décadas, la Asamblea Legislativa ha aprobado legislación dirigida a facilitar la reintegración de los confinados en la sociedad, una vez cumplan su sentencia. Uno de estos estatutos que viabiliza lo antes, versa sobre la eliminación de convicciones. El objetivo principal de esta legislación original (que permea en sus enmiendas posteriores) era ayudar y servir como un estímulo para la rehabilitación de personas que han incurrido en alguna falta y que luego mantienen una buena conducta en la comunidad. En su origen, la Ley Núm. 108 de 21 de junio de 1968,

---

[3] A tenor del Artículo 6 de la Ley 300-1999, 8 LPRA sec. 482b, el certificado lo emitirá el SICHDe.

[4] El Artículo VI del Reglamento Núm. 9030 es equivalente al Artículo 4 de la Ley 300-1999, *supra,* y a esos fines desglosa los mismos delitos que impiden a una persona ejercer como proveedor de servicios de cuidado en la jurisdicción de Puerto Rico.

(inspirado en la exposición de motivos de leyes anteriores),[5] según ampliamente discutido en *Pueblo v. Ortiz Martínez* 123 DPR 820, 829, (1989), establece que, la razón principal que animó la aprobación del estatuto sobre eliminación de antecedentes penales, fue el reconocimiento legislativo de que, el ser humano muchas veces supera aquellas actuaciones y conductas ilegales del pasado, y que compete al Estado proveer los mecanismos necesarios para una total rehabilitación. Su efecto principal es borrar las consecuencias jurídicas y socioeconómicas que en nuestra sociedad representa la existencia permanente de un récord penal. Se trata de una acción de carácter remedial encaminada a proteger y a hacer valer, de manera más efectiva, los derechos civiles de un ciudadano.[6]

Como parte de tales esfuerzos, la Asamblea Legislativa enmendó el estatuto mediante la Ley 254 de 27 de julio de 1974 (Certificaciones de Antecedentes Penales o Ley 254-1974) y luego mediante la aprobación de la Ley 314-2004, *supra.* El referido estatuto[7] viabiliza la eliminación de una convicción por delito grave, una vez se cumplan las siguientes circunstancias:

> [t]oda persona que haya sido convicta de un delito grave que no esté sujeta al Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores ni al Registro de Personas Convictas por Corrupción, podrá solicitar del Tribunal de Primera Instancia una orden para la eliminación de la convicción del Certificado de Antecedentes Penales, siempre que concurran las siguientes circunstancias: (a) que hayan transcurrido cinco (5) años desde que cumplió la sentencia y durante ese tiempo no haya cometido delito alguno; (b) que tenga buena reputación en la comunidad; y (c) que se haya sometido a la muestra requerida por la Ley del Banco de Datos de ADN, de estar sujeta a ello. El peticionario acompañará los documentos necesarios para probar las alegaciones de su petición. El Ministerio Público podrá oponerse o allanarse a la petición, en cuyo caso no será necesario celebrar vista. *Santiago Cora v. Estado Libre Asociado de Puerto Rico,* 2025 TSPR 44, resuelto el 30 de abril de 2025.

El Tribunal Supremo ha establecido que, una vez, las convicciones son eliminadas del certificado de antecedentes penales,

---

[5] Véase, *Pueblo v. Ortiz Martínez* 123 DPR 820, 828-830, citando al P. del S. 169 de 14 de marzo de 1957, P. de la C. 14 de 1962 y P. de la C. 144, respectivamente.
[6] *Íd.,* a la pág. 830.
[7] 34 LPRA 1725a-2.

estas deben ser excluidas de todo registro o constancia, ante las autoridades del orden público. *J.H.V. v. Negociado de la Policía de Puerto Rico,* 2025 TSPR 139, resuelto el 12 de diciembre de 2025. Lo antes, sin que el Estado esté imposibilitado de considerar el contenido de los archivos de la Policía, independientemente de que el certificado de antecedentes penales sea negativo. *Íd.* Análogamente, el Estado no está obligado a devolver a una persona las fotografías del fichaje y sus huellas dactilares luego de que extingue su sentencia y logre eliminar su convicción del certificado de antecedentes penales. *Íd.*

### III.

En el presente caso, el Recurrente cuestiona la determinación de la agencia recurrida de expedir un certificado de cumplimiento negativo, a su entender, por la mera existencia de sus huellas dactilares en el sistema del FBI. Según expone, sus convicciones de apropiación ilegal, en Puerto Rico, en el año 2005 y de agresión en el estado de Nevada, en el año 2008 no pueden ser consideradas debido a que no constituyen convicciones activas, ni surgen de su Certificado de Antecedentes Penales. Argumenta que, incidió la agencia recurrida al aplicar de forma automática el Artículo 4 de la Ley 300-1999, *supra,* sin ponderar sus derechos constitucionales, la política pública de rehabilitación y reinserción social, el tiempo transcurrido desde los hechos, entre otros.

En su alegato, la agencia recurrida señala que, el dictamen impugnado es conforme a las disposiciones de la Ley 300-1999, *supra.* Destaca que, al evaluar la procedencia de la expedición de un certificado de cumplimiento, la Asamblea Legislativa no dispuso de otros factores a considerar, por ejemplo, la antigüedad de los hechos, la reincidencia o la ausencia de inscripción en los registros. Añade que, recientemente el Alto Foro facultó al Estado a considerar la información que surge de sus archivos, separadamente de lo que refleje el certificado de antecedentes penales. *J.H.V. v. Negociado de la Policía de Puerto Rico,* supra. Discute que, el Recurrente no

alberga una expectativa razonable de intimidad, según lo resuelto por el Tribunal Supremo en *Santiago Cora v. Estado Libre Asociado de Puerto Rico,* supra.

Luego de examinar sosegadamente el expediente ante esta Curia, junto a la normativa aplicable, colegimos que la agencia recurrida actuó acorde con la Ley 300-1999, *supra,* al expedir al Recurrente un certificado de no cumplimiento. Surge claramente del Artículo 4 de dicha ley que, la Asamblea Legislativa estableció una prohibición categórica a que se expida un certificado de cumplimiento a personas que resultaren convictas por alguno de los delitos allí enumerados, sin excepciones y sin considerar factores adicionales. Se colige de la Exposición de Motivos de la Ley 300-1999, *supra,* que la intención del legislador al codificar una lista taxativa de setenta (70) delitos en el Artículo 4, fue prohibir cualquier conducta que ponga en riesgo la seguridad y el bienestar de los sectores más vulnerables. Con ello, el legislador fue explícito al establecer quiénes no podrán desempeñarse como proveedores de servicios de cuidado, sin disponer de exclusiones, sin contemplar el tiempo transcurrido y sin considerar que se obvie la comisión de tal delito cuando este haya sido eliminado del certificado de antecedentes penales.

En virtud de lo anterior es forzoso concluir que, la agencia recurrida estaba impedida de expedir el certificado de cumplimiento a favor del Recurrente, por este poseer un historial delictivo de agresión y de apropiación ilegal, codificados como prohibidos bajo los números 6 y 42 del Artículo 4, respectivamente. Sobre tales bases dictaminamos que, la determinación del Departamento de Salud fue razonable y conforme a la Ley 300-1999, *supra,* y al Reglamento 9030. Por voluntad legislativa, la agencia recurrida carecía de discreción para actuar distinto, igualmente esta Curia.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones